IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SCOTT W. SMITH                                                    PLAINTIFF

vs.                                    CIVIL NO. 06-3010

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                     DEFENDANT

## MEMORANDUM OPINION

Scott Smith ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act

("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of

the Social Security Administration denying his application for disability insurance benefits ("DIB")

under Title II of the Act.

## Background:

The application for DIB now before this court was filed on November 7, 2002, alleging an

onset date of November 16, 2001, due to arm, back, knee, and heal pain, as well as breathing

problems. (Tr. 16, 56-58). An administrative hearing was held on February 16, 2005. (Tr. 267-

299).

At the time of the administrative hearing, plaintiff was fifty-five years old and possessed a

high school education. (Tr. 270). The record reveals that he had past relevant work ("PRW")

experience as a body repairer, painter, and framer in an auto body shop. (Tr. 106).

The Administrative Law Judge ("ALJ"), rendered an unfavorable decision on June 21, 2005.

(Tr. 22). He concluded that plaintiff's impairments were severe but determined that they did not

meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.

The ALJ then found that plaintiff retained the residual functional capacity ("RFC") to perform a range of light work, to include positions as a cashier, food preparer, and assembly worker. (Tr. 22).

On November 10, 2005, the Appeals Council granted plaintiff's request for review. (Tr. 7-9). Plaintiff was advised of the Appeals Council's intent to issue a new decision and was given the opportunity to submit additional evidence. In its opinion, the Appeals Council noted that the ALJ had limited plaintiff to light work and that the vocational expert had testified that plaintiff's skills were not transferable. As of July 28, 2004, when plaintiff reached age fifty-five, he was considered an individual of advanced age. Under Rule 202.06 of the Medical-Vocational Guidelines (Grids), an individual aged fifty-five or older with no transferable skills and an RFC for light work would be considered disabled. (Tr. 8).

On January 18, 2006 the Appeals Council issued a partially favorable decision, finding that prior to July 28, 2004, plaintiff had the RFC to perform a full range of light work and was not disabled under Rule 202.14. However, as of July 28, 2004, the Appeals Council found that plaintiff, who was now age fifty-five, was disabled under Grid Rule 202.06. Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Although both parties were afforded the opportunity to file appeal briefs, plaintiff chose not to do so. (Tr. 6). As such, the case is now ready for decision.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

AO72A
(Rev. 8/82)

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

3

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## Discussion:

Of particular concern to the undersigned in the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a

4

medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case the ALJ concluded that plaintiff could perform light work. Although he conceded that plaintiff's lung problems and back, heel, and elbow pain were severe impairments, the ALJ failed to explain how these non-exertional impairments impacted plaintiff's ability to perform work-related activities. We note that pain is a non-exertional impairment that interferes with an individual's ability to perform work-related activities and must be considered by a vocational expert. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

The pertinent medical evidence reveals as follows. In January 2001, x-rays of plaintiff's cervical spine demonstrated minimal degenerative scoliosis with marked spurring laterally in the lower thoracic spine and anteriorly to some extent in the T10, T11, and T12 areas. (Tr. 160). These spurs were so prominent that the radiologist concluded they represented old trauma. X-rays of plaintiff's thoracic spine showed posttraumatic degenerative changes with reversal of the normal curvature of the cervical spine superiorly with accentuated lordosis inferiorly associated with old arthritis and degenerative change. There was facet degenerative change bilaterally in the mid-to-lower cervical spine. There was also some degree of neural foraminal narrowing due to degenerative changes at the C2-3, C3-4, and C4-5, along with mild posterior spurring at the C5-6 anteriorly and posteriorly. (Tr. 160-161).

AO72A
(Rev. 8/82)

On August 10, 2001, an MRI of plaintiff's thoracic spine revealed mild degenerative changes and disk bulges at the T11-12 and T12-L1 levels. (Tr. 170).

On August 31, 2001, a neurosurgery consultation was requested due to plaintiff's long history of neck and upper back pain. (Tr. 151). Records indicate that plaintiff had mononeuropathy of the left and right sides, myofascial disease, and bilateral peri-elbow and wrist pain. (Tr. 151).

On January 3, 2002, plaintiff was treated for worsening elbow pain, back pain, and an overactive bladder. (Tr. 155). He was diagnosed with epicondylitis of the right elbow and urinary frequency. A physical exam revealed right lateral anterior elbow tenderness, slight bladder distention with need to void, and a slightly enlarged prostate. Plaintiff was prescribed a medrol dose pack, Terazosin, and Lodine. (Tr. 155).

On February 20, 2002, plaintiff was treated for elbow pain and back spasm. (Tr. 149). A physical exam revealed 5/5 motor strength in his upper extremities and an unrestricted range of motion in his joints. The doctor did note some epicondylar tenderness but no crepitus. Plaintiff was diagnosed with chronic back spasms, epicondylitis of the right elbow, urinary problems, tattoos, and erectile dysfunction. He was prescribed Oxybutynin, Nicotine patches, Viagra, and Kenelog. (Tr. 150).

On July 22, 2002, plaintiff requested more heelbos (elbow pads) for his elbow pain. (Tr. 144). Plaintiff was noted to have diminished breath sounds bilaterally but no other abnormalities. According, he was diagnosed with elbow pain and tobacco use. The doctor again prescribed Zyban

AO72A
(Rev. 8/82)

and ordered plaintiff refills of Tylenol # 3 and Combivent. He also reordered plaintiff heelbos for both elbows. (Tr. 144).

On August 22, 2002, plaintiff was treated for slight shortness of breath. (Tr. 140). However, plaintiff's physical examination was unremarkable. Accordingly, he was diagnosed with COPD, gastritis, urinary frequency, degenerative joint disease, and tobacco use (quitting). Dr. Tim Paden prescribed Oxybutynin and Aciphex and ordered a urology consult. (Tr. 140).

On October 3, 2002, plaintiff complained of lower back pain and urinary frequency. (Tr. 138). X-rays of his lumbar spine revealed degenerative change. (Tr. 169). For this, plaintiff was prescribed a trial of alpha blocker, Relafen, and Terazosin. (Tr. 138).

On October 16, 2002, an x-ray of plaintiff's right calcaneus showed large inferior and superior calcaneal spurs. (Tr. 168). Plaintiff was diagnosed with pharyngitis, a right heel spur, and back pain. (Tr. 137). He was prescribed Zithromax, given samples of Vioxx, and referred for an orthopaedic evaluation. (Tr. 137).

On October 22, 2002, plaintiff was prescribed comfort orthotic pads for his heel pain. (Tr. 134). He was also instructed regarding strengthening exercises. (Tr. 134).

On December 17, 2002, x-rays of plaintiff's right heel showed prominent plantar and posterior calcaneal spurring. (Tr. 166). Mild degenerative changes of the first metacarpal were also noted. (Tr. 167).

On January 15, 2003, plaintiff was prescribed a Medrol Dose Pak for arthritis and elbow pain. (Tr. 128). The doctor also increased his dosage of Terazosin. (Tr. 128).

7

On February 18, 2003, plaintiff was prescribed tullis heel cups to treat his heel pain. (Tr. 126). Dr. Ruth Thomas, an orthopaedic surgeon, noted pain in the mid calcaneal fat pad. (Tr. 126).

On March 4, 2003, plaintiff complained of lower back pain and pain in his elbows. (Tr. 125). X-rays of plaintiff's elbows revealed minor degenerative changes involving the medial portion of the proximal ulna. (Tr. 165). Plaintiff rated his pain as a five on a scale of one to ten. (Tr. 125). He was prescribed Tylenol # 3 and a Combivent inhaler. (Tr. 125).

On March 18, 2003, plaintiff was treated for chronic heel pain. (Tr. 124). It was noted by Dr. David Wassell that plaintiff was a disabled veteran. (Tr. 124).

On March 21, 2003, an MRI of plaintiff's lumbar spine revealed loss of disc height at the T12-L1 through L5-S1 levels, a large right paracentral disc herniation causing impingement upon the right L5 nerve route at the L4-5, extensive facet and ligamentous hypertrophy causing left more than right neural foraminal narrowing, a diffuse asymmetric right posterior bulge at the L5-S1 level with facet and ligamentous hypertrophy, a diffuse posterior disc bulge at the L3-4 with facet and ligamentous hypertrophy, a central hyperintense signal in the annulus at the L2-3 consistent with an annulus tear, mild facet and ligamentous hypertrophy at the L2-3 level, and a small posterior disc bulge at the L1-2 level. (Tr. 162). As such, plaintiff was diagnosed with a large right paracentral disc herniation at the L4-5 level impinging upon the right L5 nerve root; spondylosis in the lumbar spine, especially at the facet joint; and, a hyperintense annulus tear at the L2-3 and T12-L1 levels. (Tr. 163).

AO72A
(Rev. 8/82)

On August 2, 2003, plaintiff underwent pulmonary function studies. (Tr. 235-241). Test results were suggestive of an obstructive disorder. (Tr. 239). This same date, a chest x-ray revealed hyperinflated lungs with widened intercostal spaces. (Tr. 234). As such, plaintiff was diagnosed with COPD. (Tr. 234).

Because the ALJ failed to consider this evidence in his RFC assessment, we believe that remand is necessary to allow him to do so. Therefore, on remand, the ALJ is directed to reevaluate plaintiff's RFC. The ALJ is also directed to ensure that the RFC assessment prepared by Dr. Jamie Schmidt and utilized by the vocational expert ("VE") during cross-examination is included in the record. We note that this assessment was presented to the VE but is not included in the current record. (Tr. 296). It is also not referred to in the ALJ's opinion. As such, the ALJ is also directed to consider this assessment prior to rendering a new opinion concerning plaintiff's RFC.

We also note that on March 18, 2003, Dr. Wassell, a doctor with the Veteran's Administration ("VA"), noted that plaintiff was a disabled veteran. (Tr. 124). Although the record does not contain the official notice from the VA concerning plaintiff's disability, we believe that the ALJ should have sought clarification regarding this issue. An ALJ is required to address a finding by the VA that a plaintiff is disabled. *See Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). Accordingly, on remand, the ALJ is directed to develop the record further in this regard.

AO72A
(Rev. 8/82)

**Conclusion:**

Based on the foregoing, we reverse the ALJ's decision and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this <u>27th</u> day of November 2006.

<u>/s/ Beverly Stites Jones</u>
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)